THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. THE BOARD OF COMMISSIONERS OF ATCHISON COUNTY et al.

1. CASES, *Distinguished.* The cases of *Adams v. Beman,* 10 Kas. 37, and *Challiss v. Rigg,* 49 id. 119, distinguished.

2. TAXATION—*Excessive Assessment—Restraining Collection of Illegal Excess.* In 1893 the property of the Chicago, Burlington & Quincy Railroad Company in Atchison county was assessed by the state board of railroad assessors at its true and actual value. The city and township assessors of that county, upon an agreement entered into between themselves, assessed in 1893 all of the other property of the county at 25 per cent. of its true value; and the property of the county, except the railroad property, was taxed in 1893 upon such 25 per cent. assessment. Subsequently the railroad company tendered to the county treasurer of Atchison county the full amount of all of the state taxes which were levied on its property, and also an amount for the county and other taxes equal to that assessed on other property of the county, and then brought its action to enjoin the county authorities from collecting the remainder. *Held,* That the railroad company is entitled to an injunction to restrain the collection of the illegal excess.

*Error from Atchison District Court.*

THIS action was brought on the 5th day of January, 1894, by *The Chicago, Burlington & Quincy Railroad Company* against *The Board of County Commissioners of the County of Atchison,* and J. C. McCully, as treasurer of Atchison county, to enjoin 75 per cent. of its taxes, other than state taxes, as levied in Atchison county for the year 1893. The defendants filed an answer containing a general denial. Trial had on the 18th of June, 1894, before the court without a jury. The court made and filed the following findings of fact:

"The plaintiff is a railroad corporation, operating and having the exclusive control, and being entitled to all the benefits and subject to all liabilities on such account, including the payment of taxes properly assessed and legally chargeable against such property from year to year, now and for several years last past, of a certain line of railroad extending southerly

through the counties of Doniphan and Atchison, in the state of Kansas, to the city of Atchison in said Atchison county, and being $5\frac{79}{100}$ miles in Atchison county, known as the Atchison & Nebraska railroad, and sometimes called the Burlington & Missouri River railroad in Nebraska.

"The Kansas state board of railroad assessors, in assessing the railroad property described in paragraph No. 1 hereof for taxation for the year 1893, did not assess the said line of railroad at more than the true and actual value thereof, in order to discriminate against said road, or in response to the demands of their political partisans, or otherwise, but assessed said railroad property as by law required, exercising their honest judgment therein as to the value of said property, and performed their duty in such respect fully, and thereby assessed said railroad property at the true value thereof, for such purposes of taxation, and taxes were levied upon said railroad property for the year 1893 upon such basis.

"The gross amount of taxes levied against the said railroad property, in the said county of Atchison, for the year 1893, was the sum of $219.90 for state purposes and $1,955.45 for other than state purposes, for the various local taxes levied in said county of Atchison.

"On the 4th day of January, 1894, the plaintiff in this action duly tendered in legal-tender money to the said J. C. McCully, county treasurer of said Atchison county, the sum of $230.90, being the sum of $219.90 with 5 per cent. penalty thereon, as required by law, unconditionally, as and for the said state taxes and penalties so levied against the said property, and the sum of $513.30, being 25 per cent. of said sum of $1,955.45, with such 5 per cent. penalty, also unconditionally, for and on account of the said taxes other than said state taxes so levied, and the aggregate of said sum was duly tendered in this action.

"But for the commencement of this action, and the issue of restraining order thereon, the said county treasurer would, between the 10th and 15th days of January, 1894, have issued a tax warrant under his hand, directed to the said sheriff of said county, commanding him to levy the amount of said taxes, with penalties thereon and his fees for collecting the same, on the goods, chattels and personal property of the said plaintiff.

"All the city and township assessors of the county of Atchison, in their respective March meetings, for the purpose of

agreeing upon an equal basis of assessment as required by law for the purposes of taxation for the year A. D. 1893, agreed among themselves to assess all property to be assessed by the city and township assessors of said Atchison county for the purpose of the levy of taxes for the year 1893 at 25 per cent. of the true value of all such property so to be assessed by them, and did so assess all such property at 25 per cent. of the true value thereof, and all such property was taxed for said year 1893 upon such 25 per cent. basis; but said assessors, in making such respective agreements, and in so assessing in pursuance thereof, did same upon the understanding that they had the legal right so to do, and without any purpose or intent to violate the law, or their duties as such assessors."

And thereon the court made and filed the following conclusion of law:

"And I find as conclusion of law from the foregoing facts that the plaintiff is not entitled to an injunction in this case."

Subsequently, the court rendered judgment against the railroad company, and in favor of the defendants for costs. The railroad company excepted, and brings the case here.

*W. F. Guthrie*, for plaintiff in error:

The constitution of Kansas requires that "the legislature shall provide for a uniform and equal rate of assessment and taxation." To carry out this constitutional requirement, the legislature has provided for a system of taxation in which equality is secured by requiring all property of every nature to be assessed at its true value in money. Tax Act, §§ 15, 27, 46, 51, 67. In this case, the railroad property was assessed four times as high relatively as all other property in Atchison county; and by the acts of the assessors the constitutional requirement of uniformity was violated to that extent. Had the injunction of plaintiff below been allowed, this constitutional requirement of uniformity would have been attained.

The infringement of that law by the acts of the assessors was just as much a wrong to the railroad as if it had been the result of the legislative enactment. *Cummings v. National*

*Bank,* 101 U. S. 153; *Walsh v. King,* 41 N. W. Rep. (Mich.) 1080.

The defendants below relied upon the case of *Adams v. Beman,* 10 Kas. 37. That decision is not an authority in this case.

In the case of *Adams v. Beman,* supra, the taxpayers whose rights were disregarded sought to take advantage of the violation of law to relieve themselves from every and all tax burdens. They sought not only to secure justice, but to profit as well. Reaching for too much, they failed to get anything —and properly. But the court, in deciding that case, pointed out just where, by attempting too much, the injunction plaintiffs failed altogether. The court took occasion, however, to clearly point out the distinctions, suggesting to what extent relief could properly be granted, and clearly absolved itself from any liability to the charge that *Adams v. Beman,* supra, might be considered to support the unjust contention which it is claimed to sustain in this case. This case comes squarely within the exception suggested in *Adams v. Beman.* It is true that in that case the primary assessing body had assessed all of one kind of personal property at full value, and all other personal property at one-third of value; but the plaintiffs in that case mistook the law; they asked for relief to which they were not entitled; they so mixed, in an equity action, valid claim with invalid, that they could not be separated; and the whole failed. In equity, they should have claimed relief only to the extent of the wrong done. The court properly held such taxes not absolutely void. It is only in disapproval of this "void" idea that *Adams v. Beman,* supra, is referred to in *Challiss v. Rigg,* 49 Kas. 119.

Appellant has no quarrel with *Adams v. Beman.* Its pleadings and proofs show that its class of property (railroads) is assessed at full value and every other species of property of every kind in the county at a uniformly less percentage. This establishes a uniform rule of discrimination within the county. The allowance of the injunction asked by appellant only puts the railroad upon an exact basis of

equality with every other payer of county taxes. As appellant claimed no such universal equal rule of discrimination as to state taxes, it tendered them in full, making the very question the court says is not presented in the Kansas case.

*C. D. Walker,* county attorney, *J. L. Berry,* and *B. F. Hudson,* for defendant in error:

There is nothing in the cases of *Adams v. Beman,* 10 Kas. 37, and *Challiss v. Rigg,* 49 id. 119, that in any way qualifies or changes the law as declared by this court in other cases, nor is the Beman case in any way qualified by the Rigg case, but is fully approved and followed therein, and they declare the law as contended for by the defendants in error. *Adams v. Beman,* supra, is and has been the settled law of this state too long to be now questioned or disturbed, and, besides, it is well supported on principle and authority.

*Cummings v. National Bank,* 101 U. S. 153, is not authority in this case. In that case the bank was assessed and taxed in the manner provided by law of the state, and at a rate three times the proportionate amount as charged against other property in the county in which the bank was located. It was the system of valuation that was condemned in the Cummings case, and held to be violative of the constitution of the state, requiring a uniform rule of assessment or valuation for taxation, and that was the ground upon which the injunction was sustained, and properly so.

If the injunction is sustained in this case, it must be upon the sole ground that the county assessors violated the rule of uniformity and equality in making the assessments of other property in the county lower than the state board of railroad assessors assessed the property of the plaintiff in error, as they are alleged to have done, and having done so, the entire tax levy of the county for 1893 was illegal and void. This, the court is asked to hold, in order that the plaintiff in error may be relieved from the payment of three-fourths of its taxes duly levied on a fair and just assessment of its property.

50—54 KAS.

The tender of the state's portion of the taxes so levied will not help the difficulty, or change the situation in the least. A mere violation of the rules of uniformity and equality in the assessment of property will not in and of itself vitiate the taxes levied thereon, and therefore the injunction must be denied. *Adams v. Beman,* 10 Kas. 37.

The state has provided a board of equalization, as a tribunal for correction of all irregularities and errors in the valuation of all the property of the state for taxation, and before which all parties having any complaint in that regard must appear and seek their remedy. Gen. Stat. of 1889, ¶ 6927.

"It shall be the duty of said board . . . to examine the abstracts of property assessed for taxation in the several counties of the state, including railroad property, which shall be laid before said board by the auditor of state," etc. Gen. Stat. of 1889, ¶ 6928.

We think the intent of the law is to furnish all parties complaining of errors of assessment or overvaluation a cheap and speedy means of obtaining relief, without a resort to the courts, and that they must first seek relief in this way, before bringing their grievances into the courts. See *Braden v. Union Trust Co.,* 25 Kas. 362.

*W. F. Guthrie,* for plaintiff in error in reply:

Defendants in error cite the case of *Braden v. Union Trust Co.,* 25 Kas. 362, in which it was decided that the authority of the state board of equalization applied as well to railroad property as other property. This is conceded. But in applying that decision to this controversy, the question presented to the supreme court, and the contention of counsel in that case upon which it was called upon to pass, should be carefully kept in view.

We do not believe that a determination of the functions of the state board of equalization is essential to the decision of this case; for, under the statute of Kansas authorizing the enjoining of an illegal tax, and the decisions of the supreme courts of the United States and of Kansas on the right un-

der such statutes to maintain injunctions without resort to the board of equalization, whatever its functions may be, these suits could be maintained in any event.

Defendants pleaded no such defense as a failure to apply to the state board of equalization. They went to trial upon a general denial. If they had desired to make such a defense, if available, it should have been pleaded by way of answer, with an opportunity to the plaintiff to meet it by reply that the state board of equalization had not acted, refused to act, acted arbitrarily, or any other matter of avoidance.

But this question was settled in the case of *Cummings v. National Bank*, 101 U. S. 153. In that case, only the acts of the primary assessors of property other than bank shares were shown, the acts of the various boards of equalization above them being neither pleaded nor proven. The question was thus squarely presented, and determined adversely to the present contention.

The opinion of the court was delivered by

HORTON, C. J.: The constitution of the state ordains that "the legislature shall provide for a uniform and equal rate of assessment and taxation." (Art. 11, § 1.) To compel uniformity and equality of assessment and taxation, the statute provides that all property shall be assessed at its true value. (Gen. Stat. of 1889, ¶ 6861.) In this case, it appears from the findings of the trial court that a greater burden of taxation was imposed in 1893 upon the property of the railroad company in Atchison county than on other property in that county. The taxes were levied upon the railroad property at its true and actual value, but the levy for taxes upon all other property was at 25 per cent. of its true value. This, of course, is subversive of the obligation imposed by law to make all property bear an equal burden of taxation. (Gen. Stat. of 1889, ¶¶ 6861, 6904.) This unequal valuation was not the result of an accidental omission of property from the assessment list, or an accidental valuation of property at more or less than its true value. The state board of railroad as-

sessors valued the railroad property in Atchison county for taxation at its true value, but the city and township assessors of that county, by an agreement between themselves, assessed all the other property of the county at 25 per cent. of its true value. Thus, by concerted action, the statute of the state was flagrantly disregarded. There is a statement in the findings that the assessors acted ignorantly. "*Ignorantia juris, quod quisque scire tenetur, neminem excusat*,"—"Ignorance of the law, which every one is bound to know, excuses nobody." The statute providing for the valuation of property for taxing purposes is so plain that "wayfaring men, though fools, shall not err therein."

VALENTINE, J., speaking for the court, in *Adams v. Beman*, 10 Kas. 37, requiring the local assessors to meet in March of each year and agree upon a basis of valuation of property, thus clearly explains the statute :

"That section means that assessors shall meet and compare their various views and notions with regard to the values of all the different articles of property required to be assessed, and then, from these various views and notions, agree upon what should be the true and correct values of all said articles of property, and then establish such values as the basis of the valuation of the property that they might be called upon to assess." (Laws of 1870, p. 245.)

That section in no way conflicts with § 15 (Gen. Stat. of 1889, ¶ 6861). The habitual disregard of the statute relating to the valuation of property for taxation by local assessors has been continuously condemned in the decisions of this court, from *Adams v. Beman*, 10 Kas. 37, to *Challiss v. Rigg*, 49 id. 119. In every instance where this court allowed the assessors an *inch* of leeway in valuing property, they have taken the proverbial *ell*, and more. The injustice of the system of taxation, growing out of the constant and continued disregard of the proper valuation of property, becomes more and more apparent in every case brought to this court where such proceedings are reviewed. The words of advice given from time to time in the decisions

of this court to local assessors have not been of any practical utility, and the condemnation by this court of such unlawful conduct has not been given respectful attention.

As before observed, the railroad property in this case was overvalued, as compared with other property in Atchison county, and the result is that the taxing officers have discriminated in their assessments so as to compel the railroad company to pay a rate four times the proportionate amount charged against other property in the county. Before the commencement of this action, the company tendered to the treasurer of Atchison county all of the taxes levied for state purposes, and a sufficient amount for the county and other taxes, if its property had been assessed as other property. There has been a gross discrimination in the taxation of the railroad property. The law has not been observed. The taxes complained of are not equal and uniform. While exact equality and uniformity cannot be had, and while mistakes and omissions by assessors may not, in all cases, be the subject of adequate remedy in the courts, yet, for the gross injustice and violation of the law complained of, there ought to be some remedy. The plaintiff below, having tendered all of the state taxes, and also its just share of the county and other taxes, is entitled to have enjoined the collection of the illegal excess. (*Pelton v. National Bank,* 101 U. S. 143; *Cummings v. National Bank,* 101 id. 153; *Lefferts v. Board of Supervisors,* 21 Wis. 688; *People v. Weaver,* 100 U. S. 539.)

It is insisted that before the plaintiff can be permitted to go into a court of equity to enjoin the collection of the illegal excess, resulting from a discrimination or overvaluation of its property, it ought to have applied to the state board of equalization for relief. *Braden v. Union Trust Co.,* 25 Kas. 362, is cited as decisive. It is ruled in that case that

"The state board of equalization has the power, when equalizing the various assessments made for taxation, to equalize the same by increasing or decreasing the valuation of railroad

property, as well as by increasing or decreasing the valuation of any other kind of property."

Under the findings of the trial court, it were useless to compel the plaintiff to apply to the state board of equalization, because it appears that the railroad property has been assessed at its true and actual value. Therefore, the state board of equalization could not change materially the valuation of that property. The action of the state board of equalization does not result in a change of the amount of taxes anyone would pay under levies for local purposes and would afford no relief to the railroad property assessed at full value, as against local taxes extended on its valuation at 100 per cent., and on all other property at a valuation of 25 per cent. The law provides for the meeting of various county and local officials to determine their rate of taxes to be levied. It is well known that the state board of equalization scarcely ever completes its equalization and gets out its reports thereof until after most of the local levies are made. Under all the facts disclosed in the findings, the equalization board could not have effectively equalized the property illegally and improperly valued, so as to have corrected the levy of the county and other local taxes, and a party is not required to do a vain thing. Further, the statute of the state expressly declares that actions may be brought to enjoin the illegal levy of any tax, charge or assessment, or the collection of them. (Civil Code, § 253.) Therefore the remedy by an injunction is expressly granted.

It was held in *Cummings v. National Bank*, supra,

"That when a rule or system of valuation for purposes of taxation is adopted by those whose duty it is to make the assessment which is intended to operate unequally, in violation of the fundamental principles of the constitution, and when this principle is applied, not solely to one individual, but to a large class of individuals or corporations, equity may properly interfere to restrain the operations of the unconstitutional exercise of power; that the appropriate mode of relief in such cases is, upon payment of the amount of the tax

which is equal to that assessed on other property, to enjoin the collection of the illegal excess."

In *Stanley v. Board of Supervisors*, 121 U. S. 535, it was remarked that,

"When the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitution or statutory direction, and operates unequally, not merely on a single individual, but on a large class of individuals or corporations, a party aggrieved may resort to a court of equity to restrain the exaction of the excess upon payment or tender of what is admitted to be due."

Our attention is called to *Adams v. Beman*, 10 Kas. 37, and *Challiss v. Rigg*, 49 id. 119, as conclusive in favor of the judgment rendered. In both of those cases, this court was asked to have the taxes declared *null* and *void*. In *Adams v. Beman*, Mr. Justice VALENTINE, speaking for the court, observed:

"This was an action brought for the purpose of restraining by injunction the collection of certain taxes claimed to be illegal and void. . . . The plaintiffs have not presented the question so that we could declare void the county taxes for Shawnee county, or the township, school district or other taxes in and for Shawnee county, and still declare the state taxes to be valid. But they have so presented the question that, if we should declare any tax void, we must necessarily declare the whole of the taxes void, state taxes as well as county and other taxes."

In *Adams v. Beman*, supra, the court also ruled that the assessment, although improperly made, did not authorize an injunction to restrain the collection of any part of the taxes levied; but no reasons are given in the opinion for that ruling, except that the levy of the taxes for 1870 was not void. The whole argument in that case made by the attorneys for the injunction is founded upon the theory that, if any of the taxes complained of were illegal, all were void. *Challiss v. Rigg*, supra, was an action brought to have the taxes declared void. The decision in that case follows *Adams v. Beman*, supra, and does not extend the rule. The court very properly

refused an injunction in the Challiss-Rigg case to restrain the collection of the illegal excess of taxes, because of the failure of the plaintiff to aver in his petition that he had paid or tendered so much of the taxes assessed against him as it could be plainly seen he ought to pay.

It was ruled in *City of Lawrence v. Killam*, 11 Kas. 499, that "where a definable portion of the tax is legal, and the balance illegal, equity will not interfere unless that which is legal be first paid." See, also, *Wilson v. Longendyke*, 32 Kas. 267, and cases cited; *Railroad Co. v. Clark*, 153 U. S. 252. In this case, unlike the cases of *Adams v. Beman*, supra, and *Challiss v. Rigg*, supra, the plaintiff does not ask

1. Cases, distinguished. the court to declare all the taxes void. The plaintiff has tendered the state taxes, and the amount of the county and other local taxes which is equal to its proportionate share of such taxes for 1893, if its property had been assessed as other property. We do not think the courts are powerless to prevent such a gross discrimination in the assessment and taxation of property as is shown in this case, where one class of property is assessed and taxed at its actual value, and all the other property in the same county is assessed and taxed at only 25 per cent. of its value. The rule favored in this case permits the state and the county to collect from the plaintiff its just share of the public burden, and prevents the unfortunate consequences which would result if all the taxes levied were declared void. Upon pay-

2. Taxation—excessive assessment—restraining collection of illegal excess. ment to the county treasurer of the taxes tendered, or their deposit into the district court for his use, the plaintiff will be entitled, upon the findings of fact of the trial court, to an injunction to restrain the collection of the illegal excess of the taxes levied.

The judgment will be reversed, and the cause remanded, with direction to the court below to enter judgment for the plaintiff, in accordance with the views herein expressed.

All the Justices concurring.